**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ADRIAN CROSS,<br><br>                    **Plaintiff,**<br><br>v.<br><br>**TURN KEY HEALTH CLINICS LLC,<br>ROB FRAZIER, JEREMY GARVIN** and<br>**WILLIAM COOPER,**<br><br>                    **Defendants.** | **REPORT & RECOMMENDATION**<br><br>**Case No. 6:18-cv-00081 DAK-DBP**<br><br>**District Court Judge Dale A. Kimball**<br><br>**Magistrate Judge Dustin B. Pead** |

**INTRODUCTION**[1]

On August 1, 2019, Plaintiff Adrian Cross ("Plaintiff" or "Mr. Cross") filed a third amended complaint in his pro se civil rights suit against Defendants Dr. William Cooper ("Dr. Cooper"), Turn Key Health Clinics LLC ("Turn Key"), Rob Frazier and Jeremy Garvin (collectively "Defendants").[2] At the time of the events giving rise to his claims, Plaintiff was housed the at Muskogee County Jail (the "Jail") as a federal pretrial detainee. While at the Jail, Mr. Cross asserts that Dr. Cooper and Turn Key violated his Eighth and Fourteenth Amendment rights by failing to provide him adequate medical care.[3] In addition, Mr. Cross brings claims against Turn Key for municipal liability, negligence and violations of the Oklahoma State

---

[1] These matters are before the above entitled court pursuant to an out of district referral from United States District Judge Ronald A. White of the Eastern District of Oklahoma, with the concurrence of the United States District Court Chief Judge Robert J. Shelby and United States District Court Judge Dale A. Kimball from the District of Utah. ECF No. 37, ECF No. 38; *see* 28 U.S.C. § 636(f).

[2] ECF No. 49; *see* 42 U.S.C. § 1983 (2019). Plaintiff filed his initial complaint on March 3, 2018, and thereafter and was given two additional opportunities to amend. *See* ECF No. 2, ECF No. 25.

[3] *Id.* at ¶¶ 2, 4.

1

Constitution. Currently pending are Dr. Cooper and Turn Key's motions to dismiss Plaintiff's complaint for failure to state a claim.[4]

For the reasons set forth herein, this court now recommends as follows.

## STANDARD OF REVIEW

I.    **Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] In other words, a plaintiff must plead both a viable legal theory and enough factual matter that, taken as true, makes the claim for relief plausible on its face.[7]

Plausibility speaks "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8] When reviewing a complaint under Rule 12(b)(6), the court accepts all plausible factual allegations as true but need not accept "unwarranted inferences, unreasonable conclusions, or arguments."[9] Moreover,

---

[4] ECF No. 52, ECF No. 67; *see also* Fed. R. Civ. P. 12(b)(6).

[5] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2008) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

[6] *Id.* (*citing Twombly,* 550 U.S. at 556).

[7] *See Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

[8] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly,* 550 U.S. at 570).

[9] *Eastern Shore Mkt.'s Inc. v. J.D. Assoc's., LLP,* 213 F.3d 175, 180 (4th Cir. 2000).

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."[10]

Determination of whether a complaint states a plausible claim is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense."[11] Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged---but has not 'show[n]' that the pleader is entitled to relief."[12]

Because Mr. Cross proceeds pro se, the court construes his pleading "liberally".[13] That said, it is not "the proper function" of the court "to assume the role of advocate for the pro se litigant,"[14] and the court "will not supply additional facts, nor will [it] construct a legal theory" assuming "facts that have not been pleaded."[15] Thus, even a "broad reading" of a complaint "does not relieve [Mr. Cross] of the burden of alleging sufficient facts on which a recognized legal claim could be based."[16]

---

[10] *Iqbal,* 556 U.S. at 678 (citation omitted).

[11] *Id.* at 679.

[12] *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

[13] *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] *Id.*

[15] *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989) (per curium).

[16] *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir. 1996) (*quoting Hall*, 935 F.2d at 1110).

## II.     42 U.S.C. § 1983

Standing alone, Section 1983 is not "a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[17] Specifically, the statute creates a federal cause of action for violations of constitutional law by those individuals acting "under color of state law."[18] The statute is designed "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[19]

In order to survive dismissal, a § 1983 plaintiff must allege: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a 'person', (4) who acted under color of any statute, ordinance, regulation, custom, or usage of any State or Territory of the District of Columbia."[20] An individual acting under color of state law "is a state government official or person who acts under the authority of state law or a private person whose conduct is fairly attributable to the State."[21]

---

[17] *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quotations and citation omitted).

[18] *See* 42 U.S.C. § 1983 (a person acting under color of state law "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.").

[19] *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L. Ed. 2d 504 (1992).

[20] *Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005) (*citing Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted)).

[21] *Butler v. Kelly,* 2019 U.S. Dist. LEXIS 203194 *3 (D. Kan. Nov. 22, 2019) (*citing Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000)).

## DISCUSSION

Defendants Dr. Cooper and Turn Key move for dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to federal rule of civil procedure 12(b)(6).[22]

### I.    Dr. Cooper's Motion to Dismiss

Plaintiff asserts that, at the time of the alleged violation, Dr. Cooper was "an employee and/or agent of Turn Key/the County/[the Jail]" who failed to provide adequate medical care while "acting within the scope of his/her employment and under color of state law."[23]

### A.    Eighth and Fourteenth Amendments

As a pre-trial detainee, Plaintiff's inadequate medical treatment claim flows from the substantive and procedural guarantees of the Fourteenth Amendment due process clause, and not the Eighth Amendment's prohibition on cruel and unusual punishment.[24] It is the Eighth

---

[22] Although a sur-reply is generally not allowed without prior court authorization, given that Mr. Cross proceeds pro se and indicates that he failed to timely receive Defendants' motions, the court accepts his filings. ECF No. 75, ECF No. 77. The court will not, however, interpret any statements or claims made in Plaintiff's opposition memoranda or sur-replies as additions or amendments to the operative complaint.

[23] ECF No. 49 at ¶ 4. Dr. Cooper does not appear to dispute that he was acting under color of state law for purposes of § 1983 liability. While most § 1983 defendants are public employees, private individuals can also act under color of state law. *See West v. Atkins*, 487 U.S. 42, 54, 56, 108 S. Ct. 2250, 101 L. Ed. 40 (1988) (physician employed by state to provide medical services to inmates "acted under color of state law for purposes of  § 1983 when undertaking his duties in treating petitioner's injury" and "[c]ontracting out [of] prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, [nor does it] deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.").

[24] *Randall v. Bd. of County Comm'rs,* 184 F. App'x. 723, 726 (10th Cir. 2006) (unpublished); *see also Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).

Amendment, however, that "provides the benchmark" and as a result the court reviews Plaintiff's claim under an Eighth Amendment analysis.[25]

The Eighth Amendment's ban on cruel and unusual punishment requires "humane conditions of confinement" including the provision of "adequate . . . medical care."[26] To state a cognizable claim, a pretrial detainee must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[27] A violation occurs when the medical treatment provided is so grossly incompetent, inadequate, or excessive that it "shocks the conscience or [is] intolerable to fundamental fairness."[28]

An inadequate medical care claim is evaluated under objective and subjective criteria, and to succeed both prongs must be met.[29] Further, not all medical conditions implicate an Eighth Amendment analysis. Under the objective prong, a deprivation must be "sufficiently serious."[30] A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

---

[25] *See Prince v. Turn Key Health Clinics, LLC,* 2019 U.S. Dist. 7716 *19 (N. D. Okla. Jan. 16, 2019); *see also Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983) (a pretrial detainee's due process rights "are at least as great as the Eighth Amendment protections available to a convicted prisoner.").

[26] *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1998) (*quoting Barney v. Pulsipher,* 143 F.3d 1299, 1310) (10th Cir. 1998)).

[27] *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis omitted) (*quoting Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

[28] *Whitehead v. Burnside,* 403 F. Appx. 401, 403 (11th Cir. 2010).

[29] *Callahan v. Poppell,* 471 F.3d 1155, 1159 (10th Cir. 2006) (*citing Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir. 2006)); *see also Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005).

[30] *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

necessity for a doctor's attention."[31] In turn, inadequate or delayed medical care only constitutes a violation if it results in "substantial harm."[32]

On the other hand, the subjective component of the analysis requires a "culpable state of mind"[33] such that the state actor "knows of and disregards an excessive risk to inmate health or safety."[34] Indeed, not only must an actor "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the actor must also actually draw those inferences.[35] Allegations of negligence in diagnosing or treating a medical condition[36]or "inadvertent failure to provide adequate medical care"[37] are not sufficient to meet the subjective prong.

### B.  Applying the Law to Facts

When considering dismissal, the court "accepts all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff."[38]

Here, the court assumes without deciding that Mr. Cross' allegations of blood "coming from his tear ducts" and "excessive blood [coming] from his mouth" satisfy the sufficiently serious component of the objective prong.[39] Plaintiff, however, fails to allege that a delay or

---

[31] *Templeton v. Anderson,* 607 Fed. Appx. 784, 786 (10th Cir. 2015) (*quoting Sealock v. Colorado,* 218 F.3d 1205, 1206 (10th Cir. 2000) (internal quotation omitted)).

[32] *See Garrett v. Stratman,* 254 F.3d 946, 940 (10th Cir. 2001).

[33] *Clemmons v. Bohannon,* 956 F.2d 1523, 1525-26 (10th Cir. 1992).

[34] *Farmer*, 511 U.S. at 834.

[35] *Id.* at 837.

[36] *See Estelle,* 429 U.S. at 105.

[37] *Riddle*, 83 F.3d at 1203.

[38] *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs.,* 633 F.3d 1022, 1025 (10th Cir. 2011).

[39] ECF No. 49 at ¶¶ 20, 22, 24; *see Mata v. Saiz,* 427 F.3d 745, 753 (10th Cir. 2005) ("[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering.").

deficiency in the medical care provided caused him to suffer a "lifelong handicap, permanent loss, or considerable pain."[40]

In addition, even assuming Plaintiff sufficiently alleged substantial harm, Mr. Cross fails to meet the subjective prong of the inadequate medical treatment analysis. Specifically, Mr. Cross fails to allege that Dr. Cooper had a "culpable state of mind" such that he knew of and purposefully disregarded "an excessive risk" to Plaintiff's health and safety.[41] Indeed, viewing the allegations in a light most favorable to Mr. Cross, the court finds that Plaintiff's claims: (i) assert disagreement with the treatment provided; (ii) improperly rely on supervisor liability; and (iii) provide conclusory statements devoid of any factual support.[42]

### i.     Disagreement as to Treatment

In general, Mr. Cross complains of delays in the monitoring and adjustment of his medications.[43] Yet, viewed closely, Plaintiff does not assert that Dr. Cooper was aware of a serious medical condition and knowingly disregarded or refused to treat it.[44] Instead, Mr. Cross

---

[40] *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001). While at the Jail, Plaintiff claims he experienced a "serious, emergent and potentially life-threatening medical problem." ECF No. 49 at ¶ 20. He does not allege, however, an actual, as opposed to potential, ongoing, permanent injury or impairment.

[41] *See Mata*, 427 F.3d at 751.

[42] *See Iqbal,* 556 U.S. at 678 (citation omitted).

[43] ECF No. 49 at ¶ 16 ("Dr. Cooper was notified on day three (3) of Mr. Cross's mental state, but did not see Mr. Cross, schedule him for an appointment or order that he be sent to a hospital."); *id.* at ¶ 20 ("Plaintiff states that his worry prompted him to request to go to the hospital to have blood drawn after such [a] long period had past (30 days or more) without it being done."); *id.* at ¶ 24 ("The Turn Key nurse said that Dr. Cooper had ordered his blood thinners to be discontinued, pending another blood test.").

[44] *See Farmer,* 511 U.S. at 846.

disagrees with the treatment provided and a "prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."[45]

For example, Plaintiff complains about the timing of his medication and the "non-therapeutic" manner in which his medication was administered.[46] Yet, offering treatment based on a doctor's medical judgment, fails to rise to the level of deliberate indifference.[47] Here, while Mr. Cross may not have received medication at the time or in the manner he intended, he nonetheless received medication consistent with a medical professional's course of treatment.[48] Likewise, any claim that "additional diagnostic techniques . . . or forms of treatment" [49] should have been utilized is insufficient and negligent failure to give sufficient medical care, even touching medical malpractice, does not amount to a constitutional violation.[50]

---

[45] *Perkins v. Kan. Dep't. of Corr.,* 165 F.3d 803, 811 (10th Cir. 1999).

[46] ECF No. 49 at ¶¶ 19, 22.

[47] *Self v. Crum,* 439 F.3d 1227, 1232 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.").

[48] ECF No. 49 at ¶ 16 (Dr. Cooper "ordered the Turn Key Nurse to give plaintiff the prescribed mental meds."); *id.* at ¶ 19 (Plaintiff's "[b]lood draws were made difficult because of Malnutrition and Dehydration"); *id* at ¶ 21 (medications were mismanaged and "dispensed at a wide degree of varied times"); *id* at ¶ 24 ("before his blood could be retested as was the protocol in that situation, a nurse restarted the blood thinners the next day at the prior dosage").

[49] *Estelle,* 429 U.S. at 107; *see Self,* 439 F.3d at 1232-33 ("[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law.").

[50] *Sparks v. Singh,* 690 Fed. Appx. 598, 604 (10th Cir. 2017) (unpublished) (*quoting Estelle*, 429 U.S. at 105-06) ("'[I]nadvertent failure to provide adequate medical care tantamount to negligence does not satisfy the deliberate indifference standard)); *see also Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir. 2003) ("Deliberate indifference requires more than a showing of simple or heightened negligence.").

Thus, while Mr. Cross' claims support a difference of opinion with Dr. Cooper's medical decisions, they do not establish a constitutional violation for inadequate medical care stemming from a deliberate indifference to Plaintiff's medical needs.[51]

### ii. Supervisor Liability

To state a claim under § 1983, there must be direct participation or involvement and Dr. Cooper may not be held liable based solely on his status as a supervisor.[52] While a supervisor may be liable for personal participation, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged" does not suffice.[53]

Mr. Cross raises several allegations related to the alleged acts and omissions of various unidentified medical staff and personnel.[54] That said, Plaintiff fails to allege a supervisory relationship or offer an affirmative link between a constitutional violation and Dr. Cooper's

---

[51] *See Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993); *Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir. 1992) (plaintiff's belief that he needed additional medication and was denied treatment by a specialist does not establish a constitutional violation); *Redding v. Marsh,* 750 F. Supp. 473, 478 (E. D. Okla. 1990) (*citing Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir. 1968) ("[a] difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.")).

[52] *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996) (supervisory status alone is insufficient to support liability under § 1983); *see also Wright v. Bowen*, 2019 U.S. Dist. LEXIS 198393 *7 (D.N.M. Nov. 15, 2019).

[53] *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009).

[54] ECF No. 49 at ¶ 13 (personnel placed Plaintiff in general population pod without medical treatment or assessment); *id.* at ¶ 14 (requests to received medication denied by nurse); *id.* at ¶ 15 (Plaintiff pleaded with personnel to give him medication); *id.* at ¶ 23 (staff failed to provide Plaintiff with clean drinking water); *id.* at ¶ 24 (Plaintiff's request to go to the hospital refused by staff).

personal participation, "exercise of control or direction, or his failure to supervise."[55] Moreover, Mr. Cross does not address the requisite state of mind or allege that Dr. Cooper, in a supervisory capacity, "acted knowingly or with 'deliberate indifference' that a constitutional violation would occur."[56]

### iii.    Conclusory Allegations

In order to survive dismissal, Plaintiff must provide "specific facts demonstrating a constitutional deprivation" and may not rely on unsupported or conclusory allegations.[57] Indeed, the mere possibility that Mr. Cross "could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims."[58]

The majority of allegations raised against Dr. Cooper are offered without factual support. And, while Plaintiff astutely employs key words and phrases regularly utilized in conjunction with an inadequate medical treatment analysis,[59] Mr. Cross' labels and conclusions simply

---

[55]  *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (citation and quotation omitted); *see also Dodds v. Richardson,* 614 F.3d 1185, 1201-02 (10th Cir. 2010) (requiring "affirmative link" between the supervisor and the constitutional violation); *Poolaw v. Marcantel,* 565 F.3d 721, 732 (10th Cir. 2009).

[56] *Serna v. Colorado Dept of Corr.,* 455 F.3d 1146, 1151, 1154 (10th Cir. 2006) ("supervisor's state of mind is a critical bridge between the conduct of a subordinate and [his] own behavior.")

[57] *Jolly v. Klein,* 923 F. Supp. 931, 943 (S.D. Tex. 1996) (*citing Schultea v. Wood,* 47 F.3d 1427, 1433) (5th Cir. 1995)).

[58] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[59] ECF No. 49 at ¶22 ("disregarded known, obvious and substantial risks"); *id* at ¶ 24 ("with deliberate indifference and reckless neglect"); *id.* at ¶ 26 ("violated the plaintiff's rights under the U.S. Constitution[ ]. [And] showed deliberate indifference by making no attempt to correct the issues mentioned here. After being made aware of there [sic] existence."); *id.* at ¶42 ("disregarded the known, obvious and substantial risks"); *id.* at ¶45 ("repeatedly disregarded the known and obvious risks to Mr. Cross's health and safety").

provide a "formulaic recitation of the elements of a cause of action" that, without additional factual support, cannot be accepted by the court.[60]

### C.  Failure to State A Claim

For these reasons, Mr. Cross fails to allege a violation of his constitutional right to adequate medical care and the court recommends dismissal of Plaintiff's § 1983 claim against Dr. Cooper for failure to state a claim upon which relief can be granted.[61]

### II.    Turn Key's Motion To Dismiss

Mr. Cross identifies Turn Key as a "private correctional care company that contracts with counties" to provide medical care at the Jail.[62] Plaintiff asserts, as a company responsible for "training and supervising its employees" and "creating and implementing policies, practices and protocols" related to medical care, Turn Key "became an agency or instrumentality of the State" and is therefore "subject to its constitutional limitations."[63] Mr. Cross brings claims against Turn Key for violation of the Eighth and Fourteenth Amendments, municipal liability, negligence and violation of the Oklahoma State Constitution.[64]

---

[60] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Twombly,* 550 U.S. at 555).

[61] Fed. R. Civ. P. 12(b)(6).

[62] ECF No. 49 at ¶ 2.

[63] *Id.*

[64] *Id.* at ¶¶ 42-57, 63-74.

**A.  42 U.S.C. § 1983[65]**

In order to state a claim, Mr. Cross must plead that "the conduct complained of was committed by a person acting under color of state law, and that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and the laws of the United States."[66] A municipality is "included among those persons to whom § 1983 applies," and may be held liable if "it has an 'official municipal policy of some nature' that 'causes' an employee to violate another's constitutional rights."[67] In the Tenth Circuit, municipal liability theory extends to private entities acting under color of state law.[68]

Mr. Cross' assertion that Turn Key contracted with "counties" to provide inmate medical care is sufficiently plausible to support his allegation that Turn Key was acting under color of law for purposes of  § 1983.[69]

---

[65] Plaintiff's claims against Turn Key are remarkably similar to those raised by the plaintiff in *Prince v. Turn Key Health Clinics, LLC,* 2019 U.S. Dist. LEXIS 7716 (N.D. Okla. January 16, 2019). Indeed, many of the averments in Mr. Cross' amended pleading appear responsive to the Oklahoma District Court's 2019 ruling. In reviewing Mr. Cross' claims, the court finds *Prince* highly instructive and is guided by the Oklahoma District Court's well-reasoned analysis.

[66] *Prince v. Turn Key Health Clinics, LLC,* 2019 U.S. Dist. LEXIS 7716 * 8 (*citing West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1998)).

[67] *Id.* at *9 (*citing Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

[68] *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 n. 13 (10th Cir. 2003).

[69] *See Prince* at * 9 ("Thus, as a matter of law, a private party that has contracted to provide healthcare services to inmates and pretrial detainees is acting under color of state law in providing those services and is, therefore, a proper defendant in a § 1983 suit.").

### B. Municipal Liability

As a private entity Turn Key cannot be liable "solely because it employs a tortfeasor---or, in other words. . . [it] cannot be held liable under § 1983 on a respondeat superior theory."[70] Rather, to establish municipal liability Mr. Cross must plead: "(1) the existence of an official policy or custom by which the plaintiff was denied a constitutional right, (2) that the policy or custom was the moving force behind the constitutional deprivation, and (3) that the policy or custom 'was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'"[71]

Actions that constitute a municipal policy or custom, include:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policy-making authority; (4) the ratification by such final policymakers of the decisions---and the basis for them---of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[72]

Mr. Cross points to a Turn Key formal regulation or policy and failure to adequately train as support for his municipal liability claim.

---

[70] *Monell,* 436 U.S. at 691 (italics omitted).

[71] *Brown v. Boothe,* 2018 U.S. Dist. LEXIS 155496 *8 (W. D. Okla. 2018) (*quoting Schneider v. City of Grand Junction Police Dep't.,* 717 F.3d 760, 769-70 (10th Cir. 2013)); *see also Graves v. Thomas,* 450 F. 3d 1215, 1218 (10th Cir. 2006).

[72] *Prince* at *11-12 (*citing Bryson v. Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations and citation omitted)).

i.      **Formal Regulation or Policy**

Plaintiff asserts Turn Key policy places a "financial cap on the amount that can be spent on outside medical care" thereby disincentivizing staff from sending inmates to outside treatment facilities.[73] Taking Plaintiff's allegations as true, as is required at the pleading stage, Mr. Cross sufficiently alleges the existence of a formal regulation or policy for purposes of municipal liability.[74] In addition to identifying a policy, however, Mr. Cross must also establish causation[75] and show that the "policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[76]

Mr. Cross' generic reference to "an affirmative causal link"[77] between Turn Key policy and his injuries proves imprecise, conclusory and lacking in the factual support necessary to establish causation. Indeed, to properly allege causation Mr. Cross must offer a direct connection between Turn Key's formal cost-saving policy and the "specific treatments or care that he was denied" as part of his claim for inadequate medical care.[78] Further, while "legal conclusions can

---

[73] ECF No. 49 at ¶ 29.

[74] *Cf. Wright v. Rasmussen,* 2018 U.S. Dist. LEXIS 171761 *17 (E.D. Okla. Oct. 4, 2018) (citation omitted) ("proof of a single isolated incident of an alleged constitutional violation is not sufficient to establish that an unconstitutional policy of custom existed in an agency.").

[75] *See Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Prince* at ftn. 8 (*citing Monell,* 436 U.S. at 692) (recognizing significance of the causation element for purposes of municipal liability).

[76] *Schneider v. City of Grand Junction Police Dep't.,* 717 F.3d 760, 769 (10th Cir. 2013) (internal quotations omitted).

[77] ECF No. 49 at ¶ 57 ("There is an affirmative causal link between the aforementioned customs, policies, and/or practices and Plaintiff's injuries and damages as alleged herein."); *see also id.* at ¶ 33 (Turn Key's policy was "a moving force behind the constitutional violations and injuries").

[78] *Prince* at *13-14 (*citing Winslow v. Prison Health Services,* 406 Fed. App'x. 671, 674 (3rd Cir. 2011) (to sufficiently plead that a cost-cutting policy caused the alleged constitutional violation a plaintiff

provide the framework of a complaint, they must be supported by factual allegations."[79] Mr. Cross does not offer any causal link or facts in support, and it is not the obligation of the court "to piece together allegations in a complaint to establish a valid claim, even for a pro se litigant"[80]

ii    **Failure to Train**

Mr. Cross alleges that Turn Key failed to adequately train its staff on "the appropriate standard of care with respect to inmates with complex or serious medical needs."[81] Limited circumstances exist in which inadequate training can support § 1983 liability and "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[82] To state a claim, Plaintiff must establish both causation and deliberate indifference based on Turn Key's disregard for "the substantial risk of inadequate training of its employees."[83]

---

must allege "(1) what the relevant policies are; (2) what basis [plaintiff] has for thinking that policies to save money affected his medical treatment, [and] (3) what specific treatment he was denied as a result of these policies."); *see also Autry v. Cleveland Cty. Sheriff's Dep't.,* 2018 U.S. Dist. LEXIS 18477 *22 (W.D. Okla. Feb. 5, 2018) (*citing Sherman v. Klenke,* 653 F. App'x 580, 592-93 (10th Cir. 2016) (unpublished) (dismissal appropriate where plaintiff "has failed to identify any custom or practice of [the party] that has a direct causal link to the alleged constitutional violations.").

[79] *Iqbal*, 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555).

[80] *Andrews v. United States*, 2010 U.S. Dist. LEXIS 74660 * 12 (D. Colo 2010) (*citing Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)).

[81] ECF No. 49 at ¶¶ 30, 32.

[82] *Connick v. Thompson,* 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citation omitted).

[83] *Wright* at *21.

Applying municipal liability's "rigorous" causation requirement, [84] Mr. Cross fails to allege an affirmative link between Turn Key's "training deficiency and [his own] constitutional injury."[85] Similar to the deficiencies of his formal policy claim, Plaintiff's allegations of "an affirmative causal link" or policies that "were a moving force behind the constitutional violations and injuries alleged" [86] do little more than offer "threadbare recitals" of the elements of a municipal liability claim.

In his pleading, Mr. Cross references "prior incidents"[87] where, he asserts, inmates died or were injured while under Turn Key's care.[88] Yet, even generously accepting these unsubstantiated claims as evidence of a pattern or notice,[89] absent causation, tethering Turn Key's failure to train to a violation of Mr. Cross' federally protected right to adequate medical

---

[84] *See Brown,* 520 U.S. at 405.

[85] *Prince* at *14 (*citing City of Canton v Harris,* 489 U.S. 378, 391, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

[86] ECF No. 49 at ¶ 33.

[87] Notably, the *Prince* Court relied on a failure to identify "prior incidents" of Turn Key's constitutional violations as support for its determination that plaintiff failed to sufficiently allege municipal liability for failure to train. *See Prince* at *17-18. Presumably, in an attempt to address the *Prince* Court's concerns, Mr. Cross identifies other, prior incidents.

[88] ECF No. 49 at ¶ 35 (in June of 2016 a Turn Key nurse "did nothing to intervene" while Anthony Huff died in a restraining chair); *id.* at ¶ 36 (in 2016 an El Reno man died "while under the care of Turn Key medical staff"); *id.* at ¶ 37 (in 2016 a man in the Creek County Jail under the care of Turn Key died after his complaints "of breathing problems were disregarded"); *id.* at ¶ 38 (in 2016 at the Muskogee County Jail, Michael Edwin Smith "encountered deliberate indifference to his serious medical needs" by Turn Key staff); *id.* at ¶ 39 (mistreatment of Mr. Smith put Turn Key "on notice that the medical care and supervision provided by Turn Key and the detention staff was wholly inadequate and placed inmates like Mr. Cross at excessive risk of harm.").

[89] It is unclear if the other incidents cited relate to Plaintiff's claim for municipal liability based on Turn Key's cost-saving policy or its failure to adequately train.

care while housed at the Muskogee County Jail, the court need not reach the issue of knowledge or deliberate indifference.[90]

### C.  Violation of A Constitutional Right

Finally, even assuming Plaintiff sufficiently alleged municipal liability based on a Turn Key policy or failure to train, which he has not, Mr. Cross must also allege an underlying constitutional violation.[91] Indeed, "a municipality where there was no underlying constitutional violation by any of its officers."[92] Here, Plaintiff purports to state a claim for deliberate indifference to his medical needs. As a pre-trial detainee, "the Due Process Clause governs his claim of unconstitutional medical care; however, the Eighth Amendment standard provides the benchmark for such claims."[93]

To state a claim for inadequate medical care, Plaintiff must establish "deliberate indifference to his serious medical needs" consistent with the claim's objective and subjective criteria.[94] As discussed, the court assumes without deciding, that Plaintiff satisfies the sufficiently serious prong of the objective component, but has not alleged substantial injury.[95] As to the subjective component, Mr. Cross must provide facts demonstrating that a Turn Key employee, pursuant to Turn Key policy, acted with deliberate indifference by knowing of, yet

---

[90] *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388-91, 109 S. Ct. 1197, 1204-06, 103 L. Ed. 2d 412 (1989) (requiring failure to train plaintiff to allege both causation *and* deliberate indifference).

[91] *See Prince* at *18 (indicating a plaintiff must allege municipal liability "in addition to" the underlying constitutional violation.") (emphasis in original).

[92] *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (*citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 89 L .Ed. 2d. 806, 106 S. Ct. 1571 (1986)).

[93] *Prince* at 19 (*citing Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1988); *supra* at 5-6.

[94] *Prince* at *19-20 (explaining municipal liability deliberate indifference is "separate from, and in addition to, the Eighth Amendment deliberate indifference requirement); *supra* at 5-7.

[95] *Supra* at 7-8.

disregarding, "'an excessive risk to inmate health or safety.'"[96] An employee must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[97] Here, Plaintiff identifies Dr. Cooper and unnamed Turn Key personnel, but does not allege any act or omission taken, pursuant to an identified Turn Key policy or custom, that violated Plaintiff's constitutional rights.[98] Further, Plaintiff does not assert a "culpable state of mind"[99] or knowing disregard of an excessive risk to health or safety.[100]

### D.  Failure To State A Claim Against Turn Key

Accordingly, Mr. Cross fails to allege municipal liability based on a policy or failure to train, that caused a deprivation of his constitutional rights and therefore the court recommends dismissal of Mr. Cross' federal § 1983 claims against Turn Key for failure to state a claim upon which relief can be granted.[101]

### III.    Remaining State Law Claims

Mr. Cross' remaining causes of action bring claims against Turn Key for negligence and violation of the Oklahoma State Constitution.[102]

---

[96] *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000) (*quoting Farmer*, 511 U.S. at 837).

[97] *Farmer,* 511 U.S. at 837.

[98] *See Garcia v. Salt Lake County,* 768 F.2d 303, 310 (10th Cir. 1985); *see also Schneider,* 717 at 770 (*citing Brown*, 520 U.S. at 404) ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has cause an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

[99] *Mata*, 427 F.3d at 751.

[100] *See Prince* at *24; *supra* at 8.

[101] Fed. R. Civ. P. 12(b)(6).

[102] ECF No. 49.

When all federal claims have been dismissed, "the court may, *and usually should,* decline to exercise jurisdiction over any remaining state law claims."[103] Here, the court recommends dismissal of Plaintiff's federal claims against Dr. Cooper and Turn Key. Consistent therewith, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and recommends that they be dismissed without prejudice for lack of subject matter jurisdiction.[104]

## RECOMMENDATION

For the reasons stated herein, the court RECOMMENDS that Defendants' motions be GRANTED and Mr. Cross' federal claims against Dr. William Cooper and Turn Key Health Clinics, LLC, be dismissed for failure to state a claim.[105] Additionally, the court RECOMMENDS that Plaintiff's remaining state law claims, brought against Turn Key for negligence and violation of the Oklahoma State Constitution, be dismissed without prejudice for lack of subject matter jurisdiction.

Copies of this Report and Recommendation are being sent to Plaintiff, who is hereby notified of his right to object. Plaintiff must file any objection to this Report and

---

[103] *Koch v. City of Del City,* 660 F.3d 1229, 1248 (10th Cir. 2011) (emphasis added) (internal quotations omitted) (*quoting Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir. 1998)); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

[104] *See* 28 U.S.C. §1367(c)(3) (permitting federal courts to decline supplement jurisdiction of all claims over which the court has original jurisdiction have been dismissed).

[105] ECF No. 52, ECF No. 67.

Recommendation within fourteen (14) days after being served with a copy.[106]

Failure to object may constitute waiver of objections upon subsequent review.

Dated: February 6, 2020.

Dustin B. Pead
U.S. Magistrate Judge

---

[106] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).