## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ADRIAN CROSS,** | **REPORT & RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 6:18-cv-00081-DAK-DBP** |
| **ROB FRAZIER, JEREMY GARVIN, and TERRY FREEMAN,** | **District Judge Dale A. Kimball** |
| **Defendants.** | **Magistrate Judge Dustin B. Pead** |

### INTRODUCTION[1]

On August 1, 2019, Plaintiff Adrian Cross ("Plaintiff" or "Mr. Cross") filed a third amended complaint in his pro se civil rights suit against Defendants Sheriff Rob Frazier ("Sherriff Frazier"), and Jeremy Garvin ("Mr. Garvin").[2] On March 17, 2020, Sheriff Terry Freeman ("Sheriff Freeman"), the current Sheriff of Muskogee County, was added as a substitute party-defendant with respect to Plaintiff's official capacity claims.[3]

---

[1] These matters are before the above entitled court pursuant to an out of district referral from Unite States District Judge Ronald A. White of the Eastern District of Oklahoma, with the concurrence of the United States District Court Chief Judge Robert J. Shelby and United States District Court Judge Dale A. Kimball from the District of Utah. ECF No. 37; ECF No. 38; *see* 28 U.S.C. § 636(f).

[2] ECF No. 49. Plaintiff's Third Amended Complaint also included claims against Dr. William Cooper and Turn Key Health. Both Dr. Cooper and Turn Key Health's Motions to Dismiss were granted by this court in a Report and Recommendation adopted by the District Court on March 2, 2020. ECF No. 85; ECF No; 89, ECF No. 90. An Amended Judgement was entered on March 3, 2020. ECF No. 91.

[3] ECF No. 101, Order on Substitution (allowing Terry Freeman to be "substituted for Rob Frazier as the current Sheriff of Muskogee Counting, in all pending official capacity claims.").

At the time of the events giving rise to his claims, Plaintiff was housed at the Muskogee County Jail (the "Jail") as a federal pretrial detainee.[4] Mr. Cross filed his initial pleading on Mach 16, 2018, and was granted permission to amend twice thereafter.[5] Plaintiff's third amended complaint is the operative complaint and the pleading stands on its own such that the allegations and claims set forth in Mr. Cross' prior complaints are not incorporated therein.[6]

Currently pending before this court is Sheriff Frazier, Mr. Garvin and Sheriff Freeman's (collectively, "Defendants") motion for judgment on the pleadings,[7] Plaintiff's motion to supplement and/or amend the complaint,[8] Plaintiff's motion for appointment of counsel,[9] Defendants' motions to strike Plaintiff's "supplemented/amened [sic] complaint"[10] and Defendants' motion to strike the declaration of Loretta Cross.[11]

For the reasons set forth herein, this court now recommends as follows.

## STANDARD OF REVIEW

### I.    Federal Rule of Civil Procedure 12(c)

Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure

---

[4] ECF No. 49.

[5] ECF No. 2; ECF No. 25; ECF No. 49.

[6] ECF No. 49; *see TV Communications Network Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1025 (10th Cir. 1992) ("The amended complaint must stand or fall on its own.").

[7] ECF No. 108.

[8] ECF No. 123.

[9] ECF No. 130.

[10] ECF No. 132, Defendants Rob Frazier, Terry Freeman and Jeremy Garvin's Motion to Strike; ECF No. 135, William Cooper and Turn Key Health Clinics, LLC's Motion to Strike.

[11] ECF No. 138.

12(c).[12] The standard of review under Rule 12(c) is the same as under Rule 12(b)(6)[13] and dismissal is proper "'when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'"[14] In reviewing a claim, all factual allegations are presumed true and construed in a light most favorable to the plaintiff.[15]

To survive dismissal, a plaintiff must plead both a viable legal theory and enough factual matter that, taken as true, makes the claim for relief plausible on its face.[16] When reviewing a complaint, the court accepts all plausible factual allegations but need not give credence to "unwarranted inferences, unreasonable conclusions, or arguments."[17] In turn, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."[18]

The determination of whether a complaint states a plausible claim is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense."[19] Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged---but has not 'show[n]' that the pleader is entitled to relief."[20]

---

[12] Fed. R. Civ. P. 12(c).

[13] *Am. Modern Home Ins. Co. v. Tulsa Fed. Credit Union,* 2015 U.S. Dist. LEXIS 64491 *6 (E.D. Okla. May 18, 2015) (*citing Colony Ins. Co. v. Burke,* 698 F.3d 1222, 1228 (10th Cir. 2012)).

[14] *Society of Separationists v. Pleasant Grove City,* 416 F.3d 1239, 1240 (10th Cir. 2005) (*quoting Deck v. Engineered Laminates,* 349 F.3d 1243, 1256 (10th Cir. 2003)).

[15] *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991).

[16] *See Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

[17] *Eastern Shore Mkt's Inc. v. J.D. Assoc's., LLP,* 213 F.3d 175, 180 (4th Cir. 2000).

[18] *Iqbal,* 556 U.S. at 678 (citation omitted).

[19] *Id.* at 679.

[20] *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

Because Mr. Cross proceeds pro se, the court construes his pleading "liberally."[21] That said, it is not "the proper function" of the court "to assume the role of advocate for the pro se litigant,"[22] and the court "will not supply additional facts, nor will [it] construct a legal theory" assuming "facts that have not been pleaded."[23] As a result, even a "broad reading" of the complaint "does not relieve [Mr. Cross] of the burden of alleging sufficient facts on which a recognized legal claim could be based."[24]

## **DISCUSSION**

### I.    **Motion For Judgment On The Pleadings**[25]

Defendants move for dismissal of Plaintiff's claims pursuant to federal rule of civil procedure 12(c).[26] In his third amended complaint, Mr. Cross brings § 1983 claims against Mr.

---

[21] *Hall,* 935 F.2d at 1110.

[22] *Id.*

[23] *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989) (per curium).

[24] *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir. 1996) (*quoting Hall*, 935 F.2d at 1110).

[25] Defendants argue Mr. Cross' opposition to their motion for judgment on the pleadings should be stricken as untimely because it was filed several days after the May 1, 2020 deadline. ECF No. 128. Given Mr. Cross' status as a pro se litigant along with the court's interest in reaching the merits of the case, as opposed to dismissing on a technicality, the court considers Mr. Cross' arguments set forth in his "Response in Opposition To The Defendants Motion For Judgment". ECF No. 122; *see Willis v. Gov't Employees. Ins. Co.,* 2016 U.S. Dist. LEXIS 186188 *13 (D. N. M. 2016) (expressing a strong policy in favor of allowing permissive extensions to reach the merits of a case rather than dismissing on a technicality).

[26] ECF No. 108; Fed R. Civ. P. 12(c).

Garvin[27] and Sheriff Frazier[28] in their individual capacities and, through substitution, against Sheriff Freeman in his official capacity, for violations of his 5th, 8th and 14th amendment rights.[29]

### A.    42 U.S. C. § 1983

Standing alone, Section 1983 is not "a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[30] Specifically, the statute creates a federal cause of action for violations of constitutional law by individuals acting "under color of state law."[31] The statute is designed "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[32] Two prima facie elements "must be alleged in a § 1983 complaint: 1) the defendant deprived the plaintiff of a right secured by the 'Constitution and laws' of the United States and 2) the defendant acted 'under color of law.'"[33] An individual acting under color of law

---

[27] ECF No. 49 at ¶ 5.

[28] *Id.* at ¶ 3.

[29] *Id.* at ¶ 26.

[30] *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quotations and citation omitted).

[31] *See* 42 U.S.C. § 1983 (a person acting under color of state law "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.").

[32] *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L. Ed. 2d 504 (1992).

[33] *Sanders v. Muskogee County Det. Ctr.,* 2012 U.S. Dist. LEXIS 67337 * 4 (E. D. Okla. May 15, 2012) (*quoting Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *see also see also Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005) (*citing Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted) (in order to survive dismissal, a § 1983 plaintiff must allege: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a 'person', (4) who acted under color of any statute, ordinance, regulation, custom, or usage of any State or Territory of the District of Columbia.")).

"is a government official or person who acts under the authority of state law or a private person whose conduct is fairly attributable to the State."[34]

In the context of a civil rights action against multiple governmental actors, liability is predicated on each defendant's personal involvement in the constitutional violation.[35] Accordingly, it is of particular importance "that the complaint make clear exactly *who* is alleged to have done *what to whom*, [in order] to provide each individual with fair notice as to the basis of the claims against him or her."[36]

Specifically,

> When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights.[37]

## B.  Mr. Garvin and Sheriff Frazier

### i)    Failure To Allege Personal Involvement Or Provide An Affirmative Link

In order to state a viable § 1983 claim against Mr. Garvin and Sheriff Frazier in their individual capacities, Mr. Cross must point to the defendants' personal involvement in the alleged violations. A grievance denial alone without any connection to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under

---

[34] *Butler v. Kelly,* 2019 U.S. Dist. LEXIS 203194 *3 (D. Kan. Nov. 22, 2019) (*citing Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000)).

[35] *See Pahls v. Thoms,* 718 F. 3d 1210, 1225-56 (10th Cir. 2013).

[36] *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013) (*citing Robbins v. Oklahoma ex. rel. Dep't of Human Servs.,* 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original)).

[37] *Pahls,* 718 F.3d at 1225-26 (*citing Tomkovich v. Kan. B. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)).

§ 1983."[38]

The allegations against Mr. Garvin and Sheriff Frazier are sparse.[39] Plaintiff's third amended complaint simply identifies Mr. Garvin as "Administrator of the MCSO[,]"[40] and Sheriff Frazier as "Sheriff of Muskogee County, Oklahoma,"[41] and alleges that, while acting under color of law, they "violated the plaintiff's rights under the U.S. Constitution's 5th, 14th and 8th amendments. [And] showed deliberate indifference by making no attempt to correct the issues mentioned here. After being made aware of there [sic] existence."[42] Additionally, Mr. Cross references "written requests" he made to Mr. Garvin explaining that his medical condition caused him "to be very parched and [that he ] need[ed] to be hydrated."[43]

To survive dismissal, Mr. Cross may not rely upon unsupported and conclusory statements. To the contrary, he must provide "specific facts" highlighting each defendant's personal involvement in a constitutional violation.[44] Notably, Plaintiff fails to identify any specific actions by either Mr. Garvin or Sheriff Frazier, or to tether those actions to a constitutional violation and Plaintiff's "written requests" are not sufficient to support Mr. Garvin's personal involvement or participation in a violation of Mr. Cross' constitutional

---

[38] *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009).

[39] Mr. Garvin is identified only three times in the body of the complaint, and Sheriff Frazier is identified only twice. ECF No. 49 at ¶¶ 3, 5, 23, 26.

[40] *Id.* at ¶ 5.

[41] *Id.* at ¶ 3.

[42] *Id.* at ¶ 26.

[43] *Id.* at ¶ 23. Plaintiff also states that he informed Mr. Garvin that the medication "Furosemide (Lasix)" is "in fact a water pill designed to flush slow-moving toxins from the kidneys and urinary tract that are left behind" by some of Plaintiff's other medications. *Id.*

[44] *Jolly v. Klein,* 923 F. Supp. 931, 942 (S.D. Tex. 1996) (*citing Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir. 1995)).

rights.[45] As a result, the pivotal question of "*who* is alleged to have done what *to whom*" remains unanswered.[46]

Constitutional rights "allegedly invaded, [and] warranting an award of damages, must be specifically identified."[47] Mr. Cross does not do so, and his conclusory allegations fail to support a § 1983 claim against Mr. Garvin and Sheriff Frazier in their individual capacities.

### ii)    Qualified Immunity

Even assuming Mr. Cross alleged personal participation by Mr. Garvin and Sheriff Frazier, the doctrine of qualified immunity would similarly bar Plaintiff's claims.

In a § 1983 action, qualified immunity attaches and immunizes governmental officials from "liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known."[48] In order to defeat immunity a plaintiff must show: "(1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct

---

[45] ECF No. 49 at ¶23; *see Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citation omitted) ("Personal participation is an essential allegation in a § 1983 claim."); *Gaines v. United States Marshals Serv.,* 2011 U.S. Dist. LEXIS 28319 *8 (E. D. Okla. 2011).

[46] *Lamb v. Barton,* 2008 U.S. Dist. LEXIS 45941 *13 (W.D. Okla. June 11, 2008) (emphasis removed) (*citing Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1250 (10th Cir. 2008)).

[47] *Wise v. Bravo,* 666 F.2d 1329, 1333 (10th Cir. 1981) (*citing Brice v. Day,* 604 F.2d 664 (10th Cir. 1979), *cert. denied,* 444 U.S. 1086, 100 S. Ct. 1045, 62 L. Ed. 2d 772 (1980)).

[48] *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *see also Murrell v. Sch. Dist. No. 1.,* 186 F.3d 1238, 1251 (10th Cir. 1999).

at issue."[49] A right is "clearly established," if "a reasonable [government official] would understand that what he [or she] is doing violates that right."[50]

As discussed, Ms. Cross fails to connect any constitutional violation to Mr. Garvin or Sheriff Frazier and nothing in the amended pleading alleges that either defendant acted in a manner in which they should have known that Plaintiff's constitutional rights were being violated.[51]

### iii)     Supervisory Liability

To the extent that Plaintiff attempts to make an administrative claim against Mr. Garvin and Sheriff Frazier, supervisory "status by itself is insufficient to support liability."[52]

To state a claim for supervisory liability, Plaintiff must provide an affirmative link between the alleged constitutional violations and the defendants' failure to supervise.[53] Of note, simply acting as a supervisor of subordinates who have allegedly committed constitutional violations does not give rise to liability.[54] Rather, Plaintiff must allege that the supervisor actively participated in, or acquiesced to, the violations.[55]

---

[49] *Reynolds v. Powell,* 370 F.3d 1028, 1030 (10th Cir. 2004).

[50] *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001) (*quoting Wilson v. Layne,* 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999) (internal quotation marks omitted)).

[51] *Id.*

[52] *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996) (*citing Rizzo v. Goode,* 423 U.S. 362, 376, 96 S. Ct. 598, 606-07, 46 L. Ed. 2d 561 (1976)).

[53] *See Gallagher,* 587 F.3d at 1069 ("denial of a grievance, by itself without any connection to the violation of constitutional rights alleged" is insufficient).

[54] *See Woodward v. City of Worland,* 977 F.2d 1392, 1399 (10th Cir. 1992) (*citing Holland v. Harrington,* 268 F.3d 1179, 1187 (10th Cir. 2001)).

[55] *Id.*

Mr. Cross does not assert a supervisory relationship or offer an affirmative link between a constitutional violation and Sheriff Frazier and Mr. Gavin's "exercise of control of direction, or [ ] failure to supervise."[56] Additionally, Mr. Cross does not address the requisite state of mind or allege that Sheriff Frazier and Mr. Gavin, in their supervisory capacities, "acted knowingly or with 'deliberate indifference' that a constitutional violation would occur."[57]

### iv)    Judgment On The Pleadings

For the reasons stated,[58] the court recommends entry of judgment on the pleadings on Mr. Cross' § 1983 claims against Mr. Garvin and Sheriff Frazier in their individual capacities.

## C.   Sheriff Freeman

### i)    Municipal Liability

Plaintiff sues Sheriff Freeman in his official capacity as Sheriff of Muskogee County.[59] An official capacity suit represents "only another way of pleading an action against an entity of which an officer is an agent."[60] Thus in suing Sheriff Freeman in his official capacity, Mr. Cross claims to bring suit against Muskogee County (the "County") and the Muskogee County Sheriff's Office ("MCSO").[61]

---

[56] *Meade v. Grubbs,* 841 F.2d 1512, 1527-28 (10th Cir. 1988) (citation and quotation omitted).

[57] *Serna v. Colorado Dept. of Corr.,* 455 F.3d 1146, 1151, 1154 (10th Cir. 2006) ("supervisor's state of mind is a critical bridge between the conduct of a subordinate and [his] own behavior").

[58] *Supra*, Section B (i-iv).

[59] ECF No. 49 at ¶ 3; ECF No. 101, Order on Substitution.

[60] *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *see also Watson v. City of Kansas City,* 857 F.2d 690, 695 (10th Cir. 1988) (citation omitted) ("[A section 1983] "suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.").

[61] ECF No. 49 at ¶ 3 ("Plaintiff has brought suit against the County/MCSO.").

In general, the absence of a constitutional violation by the officers of a municipality negates a finding of liability against the municipality itself.[62] However, a municipality may be liable where an employee, acting "pursuant to official municipal policy[,]. . . caused a constitutional tort."[63] To establish municipal liability, a plaintiff must allege "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."[64] A municipal policy or custom may take the form of:

> (1) A formal regulation or policy statement, (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, (3) the decisions of employees with final policymaking authority, (4) the ratification by such final policy makers of the decisions--- and the basis for them--- of subordinates to whom authority was delegated subject to these policymakers' review and approval, or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.[65]

As support for his claim, Plaintiff asserts that "agents of MSCO"[66] were "deliberately indifferent to Mr. Cross's health and safety and violating Mr. Cross's civil rights are causally connected with customs, practices, and policies which the County/MCSO promulgated, created, implemented and/or possessed responsibility for."[67]

---

[62] *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir. 1993).

[63] *Monell*, 436 U.S. at 691.

[64] *Hollingsworth v. Hill,* 110 F.3d 733, 742 (10th Cir. 1997); *Martinez v. Adams Cty. Sheriff's Office,* 2020 U.S. Dist. LEXIS 101380 *5-6 (D. Colo. 2020) (*citing Monell*, 436 U.S. at 694)).

[65] *Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted).

[66] Separate from the County and MCSO, the complaint references policies and practices of Turn Key Health Clinic, LLC. These claims are addressed further in the court's February 6, 2020 Report and Recommendation. ECF No. 85 at 15-16.

[67] ECF No. 49 at ¶ 59; *see also id.* at ¶ 27 ("The deliberate indifference to Mr. Cross's serious medical and mental needs, as summarized supra, was in furtherance of and consistent with policies,

### a) Formal Regulation or Policy

Mr. Cross lists numerous grievances related to his incarceration at the Jail.[68] Yet upon review, none of his objections are tethered to an identifiable custom or policy promulgated by the County or MCSO. To simply allege, as Mr. Cross does here, that an unidentified "policy" was the "moving force" behind his injuries is conclusory and without the factual support necessary to state a viable claim.

While Mr. Cross makes reference to a "cost-cutting technique" utilized to "create a financial disincentive to send inmates to outside medical facilities,"[69] Plaintiff tethers the technique to Turn Key Health Clinic, LLC, [70]  not the County or MCSO, alleging that addressing

---

customs and/or practices which the County/MCSO and Turn Key promulgated, created, implemented or possessed responsibility for the continued operation of."); *id.* at ¶ 33 ("MCSO and Turn Key's inadequate or non-existent policies and customs were a moving force behind the constitutional violations and injuries alleged herein.").

[68] ECF No. 49 at ¶ 13 (failure to place "in an area of the Jail for more frequent observation"); *id.* (failure to "set for an appointment with a psychiatric physician"); *id.* (failure to put a "medical treatment or assessment plan in place"); *id.* at ¶ 15 (refusal to provide "medication, or send him to a phych [sic] hospital"); *id.* at ¶ 17 (required to sleep "on the floor in unsanitary conditions" and live in a cell with a "door that did not close or lock, [and the] speaker and button on [the] wall used to contact staff in case of need (ie., medical emergency) did not work"; *id.* ¶ 18 (victim of a "racially fueled" attack by another inmate); *id.* at ¶ 20 (denied request to "to go to hospital to have blood drawn"); *id.* at ¶¶ 23, 25 (failure to provide clean, cold drinking water); and *id.* at ¶ 25 (not allowing "regularly accessed yard time").

[69] *Id.* at ¶ 29.

[70] Separate from the County and MCSO, the complaint references policies and practices of Defendant Turn Health Clinic, LLC which are further addressed in the Court's February 6, 2020 Report and Recommendation. *See* ECF No. 85 at 15-16.

medical issues at the Jail amounts to a financial gain for Turn Key.[71] In addition, Mr. Cross fails to allege causation and does not offer a connection[72] between the cost-saving policy and "specific treatments or care that he was denied."[73]

### b) Failure to Train

There are limited circumstances under which a claim for inadequate training can support § 1983 liability and "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[74] To state a claim, Plaintiff must establish both causation and deliberate indifference based on an entity's disregard for "the substantial risk of inadequate training of its employees."[75]

Plaintiff alleges MCSO "utterly failed to train its detention staff in how to properly care for or supervise inmates, like Mr. Cross, with complex or serious medical and mental needs, with

---

[71] *Id.*

[72] *Autry v. Cleveland Cty. Sheriff's Dep't.,* 2018 U.S. Dist. LEXIS 18477 *22 (unpublished) (dismissal appropriate where plaintiff "failed to identify any custom or practice of [the party] that has a direct causal link to the alleged constitutional violation.").

[73] *Prince v. Turn Key Health Clinics,* LLC 2019 U.S. Dist. LEXIS 7716 at *13-14 (*citing Winslow v. Prison Health Services,* 406 Fed. App'x. 671, 674 (3rd Cir. 2011) (to sufficiently plead that a cost-cutting policy caused the alleged constitutional violation a plaintiff must allege "(1) what the relevant policies are; (2) what basis [plaintiff] has for thinking that policies to save money affected his medical treatment, [and] (3) what specific treatment he was denied as a result of these policies.")); *see also Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317-18 (10th Cir. 2002) (liability requires an underlying constitutional violation).

[74] *Connick v. Thompson,* 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citation omitted).

[75] *Wright v. Rasmussen,* 2018 U.S. Dist. LEXIS 171761 *21 (E.D. Okla. Oct. 4, 2018) (citation omitted); *Prince*, 2019 U.S. Dist. LEXIS 7716, at ftn. 8 (*citing Monell,* 436 U.S. at 692) (emphasizing significance of causation requirement for purposes of municipal liability).

deliberate indifference to the health and safety of those inmates."[76] Yet again, simply stating that a generalized failure to train was the "moving force behind the constitutional violations and injuries alleged herein" is not sufficient.[77]  And, while Mr. Cross asserts a causal link[78] between his "civil rights" and an unidentified policy, his claim only provides "threadbare recitals" of the elements of a municipal liability claim without any factual support.[79]

Thus, despite use of pertinent terminology,[80] Plaintiff fails to identify any specific training, or training deficiency, or tie an identifiable training deficiency to a constitutional violation or injury by MCSO and the County.

### c)  Constitutional Violation

Because Mr. Cross fails to identify any municipal custom or policy promulgated by

---

[76] ECF No. 49 at ¶ 31. Plaintiff also references a "policy, practice or custom of understaffing county jails, . . ., with undertrained and underqualified medical personnel who are ill equipped to evaluate, assess, supervise, monitor or treat inmates, like Mr. Cross, with complex and serious medical and mental needs." Again, however, Mr. Cross connects this "staffing" policy to Turn Key, not to MCSO or the County. *Id.* at ¶ 30; *see also id.* at ¶ 34 ("Turn Key's corporate policies, practices and customs as described supra, have result in deaths or negative medical outcomes in numerous cases, in addition to Mr. Cross's.").

[77] *Id.* at ¶ 33.

[78] ECF No. 49 at ¶ 59 ("Mr. Cross's civil rights are causally connected with customs, practices and policies which the County/MCSO promulgated, created, implemented and/or possessed responsibility for."); *see also id.* at ¶ 33.

[79] *See Iqbal,* 556 U.S. at 678 (citation omitted); Jolly, 923 F. Supp. at 943 (*citing Schultea,* 47 F.3d at 1433) (requiring "specific facts demonstrating a constitutional deprivation").

[80] ECF No. 49 at ¶ 31 ("failed to train"); *id.* ("deliberate indifference"); *id.* at ¶ 33 ("inadequate or non-existent policies and customs"); *id.* ("moving force"); *id.* ("constitutional violations and injuries").

the County or MCSO, or to provide a link between an identifiable policy and his injuries, the court need not reach the issue of a constitutional violation. Nonetheless, even assuming proper identification of a policy and of a causal link, Mr. Cross' fails to state a constitutional claim for inadequate medical care, conditions of his confinement or failure to protect.[81]

To state a claim for inadequate medical care under the Eighth Amendment,[82] Plaintiff must establish a "deliberate indifference to his serious medical needs" consistent with an inadequate medical care claim's objective and subjective criteria.[83] Mr. Cross' claims do not satisfy the sufficiently serious prong of the objective component because Plaintiff fails to allege any substantial harm or permanent physical injury as the result of any purported delay or disagreement with his medical care.[84] In turn, Plaintiff fails to meet the subjective prong or allege a "culpable state of mind" in that Defendants knew of and disregarded an excessive risk of

---

[81] *Hinton,* 997 F.2d at 782 (*citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 89 L. Ed. 2d. 806, 106 S. Ct. 1571 (1986) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.")).

[82] The Eighth Amendment standard against cruel and unusual punishment is applicable to the analysis of the claim, but it is the Fourteenth Amendment due process clause which makes those rights applicable to Plaintiff as a pre-trial detainee. *See County of Sacramento v. Lewis,* 525 U.S. 833, 849-50, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1988) (*quoting City of Revere v. Massachusetts Gen. Hospital,* 463 U.S. 239, 244, 463 U.S. 239, 103 S. Ct. 2979 (1983) ("the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner")).

[83] *Estate of Booker v. Gomez,* 745 F.3d 405, 429 (10th Cir. 2014) (*citing Garcia v. Salt Lake Cnty.,* 768 F.2d 303, 307 (10th Cir. 1985), *cf. Prince* at *19-20 (explaining municipal liability deliberate indifference is "separate from, and in addition to, the Eighth Amendment deliberate indifference requirement).

[84] *Al-Turki v. Robinson,* 762 F.3d 1188, 1193 (10th Cir. 2014) (*citing Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) ("the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.")).

harm to Plaintiff's health and safety.[85] Likewise, Mr. Cross fails to state a constitutional

violation based on the conditions of his confinement.[86] Plaintiff fails to allege that he suffered

any sufficiently serious deprivations[87] or that the Defendants were deliberately indifferent to a

substantial risk of serious harm.[88] Further, while he arguable claims mental or emotional

injury,[89] Mr. Cross does not allege any clear physical injuries stemming from his confinement as

required under the Prison Litigation Reform Act.[90]

---

[85] *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005).

[86] *See Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (internal quotations and citations omitted) (to state a violation of conditions of confinement a party the deprivation alleged must: (1) "be objectively sufficiently serious, depriving the inmate of the minimal civilized measure of life's necessities"; and (2) the prison official must have a "sufficiently culpable state of mind" and exhibit "deliberate indifference to a substantial risk of serious harm.").

[87] *See Womble v. Harvanek,* 739 Fed. Appx. 470, 473 (10th Cir. 2017) ("Lack of access to chilled water and ice would not, standing alone, constitute a sufficiently serious deprivation to sustain an Eighth Amendment conditions of confinement claim."); *Rhodes v. Chapman,* 452 U.S. 337, 247, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981) ("To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."); *Barney,* 143 at 1311 (internal quotation and citation omitted) ("The Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh."); *Rogers v. Holt,* 49 Fed. Appx. 231, 232 (10th Cir. 2002) (denial of recreation does not rise to the severity required to state a claim).

[88] *See Reynolds v. Powell,* 370 F.3d 1028, 1031 (10th Cir. 2004) (*quoting Farmer v. Brennan,* 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994) (further quotations omitted) ("To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protections, and (2) prison officials acted with 'deliberate indifference to inmate health or safety'".))

[89] ECF No. 49 at ¶ 15 ("lost the ability to control his mental anguish"); *id.* at ¶ 17 ("Plaintiff recalls a stressful, anxious feeling, void of safety or security").

[90] 42 U.S.C. § 1997e(e) (mandating "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in

Finally, while "neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners, [t]hey are, . . . responsible for taking reasonable measures to insure the safety of inmates."[91] Plaintiff alleges he was "negligently housed in [an] un-secure [sic], unscreened or classified housing unit" where he was attacked by another inmate.[92] As discussed, Plaintiff fails to identify a deficiency in County or MSCSO training or policy resulting in a substantial risk of serious harm[93] or a "deliberate indifference to inmate health or safety."[94]

Absent an underlying constitutional violation, there can be no municipal liability and judgment on the pleadings should be entered in favor of Sheriff Freeman.[95]

---

section 2246 of title 18)); *see Perkins v. Kansas Dept. of Corrections,* 165 F.3d 803, 807 (10th Cir. 1999) (citation and internal quotation omitted) (" although mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of constitutional rights [,§ 1997e(e) provides] that such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.")).

[91]*Lopez v. LeMaster,* 172 F.3d 756, (10th Cir. 1999) (internal quotation and citation omitted).

[92] ECF No. 49 at ¶ 18. Mr. Cross also alleges that he was placed in a cell with "a door that did not close or lock" and an emergency button that did not work, although it is unclear if the unlocked door and faulty emergency button relate to the alleged attack since Plaintiff claims he was attacked in "the pod" and not inside his cell. *Id.* at ¶¶ 17,18.

[93]*See Lopez*, 172 F.3d at 763 ("The County may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees" with such policy amounting to an intentional deprivation of a federally protected right.).

[94] *Id.* at 760 (*citing Farmer,* 511 U.S. at 834).

[95] *See Walker v. City of Orem,* 471 F.3d 1139, 1152 (10th Cir. 2006) (plaintiff suing a county under § 1983 must demonstrate that a municipal employee committed a constitutional violation).

### ii)    Judgment On The Pleadings

It is not appropriate for the court "to piece together allegations in a complaint to establish a valid claim, even for a pro se litigant."[96] Here, despite Plaintiff's use of key words and phrases,[97] Plaintiff simply provides a "formulaic recitation of the elements of a cause of action" without the necessary factual support[98] and, for the reasons set forth,[99] the court recommends entry of judgment on the pleadings on Plaintiff's § 1983 claims against Sheriff Freeman in his official capacity.

## II.    Motion To Amend Or Supplement and Motions To Strike

On May 6, 2020, Mr. Cross filed a motion seeking to supplement or amend his third amended complaint.[100] Attached to the motion are "exhibits," providing general information on anticoagulation medications and the drug Coumadin.[101] Separately, Plaintiff filed an affidavit claiming that "the Muskogee County Jail (M.C.J.) failed to adhere to standards of incarceration set forth by Federal, and State Law, the American Correctional Association (A.C.A.) and the U.S. Marshals Services, for non-federal facilities that house federal pretrial detainees in the custody of the U.S. Marshals."[102]

---

[96] *Andrews v. United States,* 2010 U.S. Dist. LEXIS 74660 *12 (D. Colo. 2010) (*citing Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997)).

[97] *Id.* at ¶ 31 ("failed to train"); *id.* ("deliberate indifference"); *id.* at ¶ 33 ("inadequate or non-existent policies and customs"); *id.* ("moving force"); *id.* ("constitutional violations and injuries").

[98] *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Twombly,* 550 U.S. 555).

[99] *Supra,* Section C (i-ii).

[100] ECF No. 123.

[101] ECF No. 123-1; ECF No. 123-2; ECF No. 123-3; ECF No. 123-4; ECF No. 123-5; ECF No. 123-6; ECF No. 123-7; ECF No. 123-8; ECF No. 123-9.

[102] ECF No. 124.

On June 2, 2020, prior to ruling on Plaintiff's motion to amend or supplement his third amended complaint, Mr. Cross placed his fourth "Supplemented/Amened [sic] Complaint" on the court docket.[103] In response Defendants, along with Dr. William Cooper and Turn Key, moved to strike.[104] Additionally, Defendants moved to strike the June 15, 2020, declaration of Plaintiff's spouse, Loretta Cross, as an improperly filed sur-reply.[105]

### A. Supplementation

Federal Rule of Civil Procedure 15 governs supplemental pleadings and states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.[106]

When faced with a motion to supplement, the court must "determine in the light of the particular circumstances whether filing should be permitted, and if so, upon what terms."[107] In general leave to supplement "should be freely given unless there is good reason to deny leave."[108] Under the particular circumstances of this case, the court recommends that supplementation be denied because no such claim, as asserted by Plaintiff, is viable.

---

[103] ECF No. 131.

[104] ECF No. 132; ECF No. 135.

[105] ECF No. 133; ECF No. 138; *see* DUCivR 7.1(e) ("Supplemental briefs are not encouraged and may be filed only upon motion and leave of Court.").

[106] Fed. R. Civ. P. 15(d).

[107] *Harris v. Garner,* 216 F.3d 970, 981, ftn. 11 (11th Cir. 2000) (*citing* Rule 15(c) Advisory Committee Note, 1963)).

[108] *Acad. Corp. v. Target Tech. Co.,* 2004 U.S. Dist. LEXIS 58562 *22 (D. N. Mex. 2005) (*citing Gillihan v. Shillinger,* 872 F.2d 935, 941 (10th Cir. 1989)).

Mr. Cross seeks supplementation to include a claim for procedural due process based on the Jail's failure to provide him with "a copy of the [third amended complaint ] he was to defend."[109] Plaintiff attempts to bolster his claim through the declaration of his wife, Lonetta Cross, who states that information she mailed to Plaintiff at the Jail was "returned with no explained reason as to why."[110] Yet, even considering Ms. Cross' declaration, such an event does not support a claim for procedural due process.[111] Standing alone, allegations involving jail employees acting under color of state law and the deprivation of mail do not establish a Fourteenth Amendment violation.[112] Further, allowing Plaintiff to supplement to allege that his due process rights were violated when he did not receive a document sent through the U.S. Postal Service "would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983."[113]

Additionally, while due process allows inmates a constitutional right of access to the court, a civil rights claim for obstructed access requires the identification of an actual injury.[114] Here, the record fails to demonstrate that Plaintiff was injured by any failure to receive a copy of his third amended complaint or as a result of any other "obstruction of access to Justice."[115] Indeed, between July 2019 and the time Mr. Cross was transferred from the Jail, Plaintiff filed

---

[109] ECF No. 123.

[110] ECF No. 133. The court reviews the declaration of Loretta Cross offered in support of Plaintiff's motion for amendment.

[111] *See Parratt v. Taylor,* 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981).

[112] *Id.*at 536 (*citing Baker v. McCollan,* 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) (The Fourteenth Amendment protects against deprivations "without due process of law.") .

[113] *Id.* at 544.

[114] *Lewis v. Casey,* 518 U.S. 343, 350, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

[115] ECF No. 123.

multiple documents with the court, including Responses and Sur-Replies to two separate Motions to Dismiss.[116]

### B. Amendment

In the alternative, Mr. Cross seeks leave to amend to "cure any remaining deficiency that may be housed within."[117] Under Rule 15, leave to amend should be "freely give[n] . . . when justice so requires."[118]

As a pro se litigant, Mr. Cross has generously been granted the opportunity to amend his complaint three times since filing his initial pleading in March 2018.[119] The court, in turn, has issued numerous rulings and clearly advised Plaintiff of the requirements for a properly stated claim.[120] Mr. Cross' previous amendments have repeatedly failed to cure identified deficiencies and the federal rules do not provide for unlimited amendments within which to do so.[121]

Accordingly, the court recommends that Mr. Cross' motion to supplement or amend be denied[122] and that Defendants and Dr. William Cooper and Turn Key Health Clinics motions to

---

[116] ECF No. 71; ECF No. 72; ECF No. 75; ECF No. 77. Additionally, the court and the clerk's office took numerous efforts to ensure Mr. Cross was receiving filings at the correct address. *See* Remark dated August 6, 2019; ECF No. 66; ECF No. 70; ECF No. 73; ECF No. 80; Remark dated December 16, 2019; ECF No. 82; ECF No. 83; ECF No. 84; ECF No. 86; ECF No. 104; ECF No. 105.

[117] *Id.*

[118] Fed. R. Civ. P. 15(a)(2).

[119] ECF No. 2; ECF No. 25; ECF No. 49.

[120] ECF No. 40; ECF No. 47; ECF No. 85.

[121] *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (leave to amend not allowed in cases of "repeated failure to cure deficiencies by amendments previously allowed" or when "amendment would be futile.").

[122] ECF No. 123.

strike the Fourth Amended Complaint be granted.[123] Consistent therewith, Plaintiff's

"Supplemented/Amened [sic]" Complaint should be stricken from the court's docket.[124] The

court further recommends that Defendants' motion to strike the declaration of Ms. Cross be

denied.[125]

### III.    Motion For Appointment Of Counsel

On June 2, 2020, Mr. Cross filed a motion arguing the appointment of counsel is

appropriate because he has "limited funds and limited knowledge of the law" and his case is

complex.[126] Plaintiff's previously filed motion for appointment of counsel was denied.[127]

While defendants in criminal actions have a constitutional right to representation by an

attorney,[128] there is "no constitutional right to appointed counsel in a civil case."[129] Indigent

parties in civil actions who cannot obtain counsel may apply for counsel and it is within the

court's discretion to appoint.[130] It is the burden of the applicant to convince the court that his or

her claim has enough merit to justify appointment and only in extreme cases where "the lack of

counsel results in fundamental unfairness will the district court's decision be overturned."[131]

When deciding whether to appoint counsel, the court considers a variety of factors, including

"the merits of the litigant's claims, the nature of the factual issues raised in the claims, the

---

[123] ECF No. 132; ECF No. 135.

[124] ECF No. 131.

[125] ECF No. 138.

[126] ECF No. 130.

[127] ECF No. 4; ECF No. 6.

[128] U.S. Const. amend. VI, Fed. R. Crim. P. 44.

[129] *Durre v. Dempsey,* 869 F.2d 543, 547 (10th Cir. 1989).

[130] 28 U.S.C. § 1915(e)(1); *Shabazz v. Askins,* 14 F.3d 533, 535 (10th Cir. 1994).

[131] *Hill v. Smithkline Beecham Corp.,* 393 F.3d 1111, 1115 (10th Cir. 2004) (citation omitted); *see also McCarthy v. Weinberg,* 753 F.2d 836, 838 (10th Cir. 1985).

litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."[132]

Here, the court agrees that the constitutional issues raised are complex. Yet upon review, the court finds Plaintiff's request for appointment is not warranted. Over the last two years Mr. Cross has competently represented himself, filing numerous motions on his own behalf as well as appropriately responding to motions raised by the Defendants. As evidenced by the docket, Mr. Cross demonstrates an ability to capably present his claims and the court recommends that his motion for appointment of counsel be denied.[133]

## RECOMMENDATION

For the reasons stated herein, the court RECOMMENDS that Defendants' motion for judgment on the pleadings be GRANTED and Mr. Cross' claims against Jeremy Garvin, Sheriff Rob Frazier and Sheriff Terry Freeman be dismissed.[134] Additionally, the court RECOMMENDS that Plaintiff's motion to supplement or amend[135] and motion to appoint counsel be DENIED,[136] Defendants' motions to strike the fourth amended complaint be GRANTED[137] and Defendants' motion to strike declaration of Loretta Cross be DENIED.[138]

---

[132] *Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995) (quotations and citations omitted).

[133] *Id.* (district court did not abuse discretion in denying appointment of counsel where plaintiff was able to present his claims without the assistance of counsel).

[134] ECF No. 108.

[135] ECF No. 123.

[136] ECF No. 130.

[137] ECF No. 132; ECF No. 135; ECF No. 138.

[138] ECF No. 138.

Copies of this Report and Recommendation are being sent to Mr. Cross, who is notified of his right to object. Plaintiff must file any objection within fourteen (14) days after being served with a copy of the court's Report and Recommendation.[139]

DATED this 6 July 2020

_____
Dustin B. Pead
United States Magistrate Judge

---

[139] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).